UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANO ANOCETO-GONZALEZ (A# 220-071-417),<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY,<br>Respondent. | No. 1:26-cv-07122 TLN SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner is a citizen and national of Cuba who entered the United States on May 12, 2021, near the Del Rio Port of Entry. ECF No. 14-1 at 2 (Form I-213). U.S. Border Patrol agents apprehended Petitioner and placed him under arrest. Id. Immigration officials issued Petitioner a Notice to Appear ("NTA") on June 10, 2021, administratively charging him as inadmissible under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) (noncitizen not in possession of valid entry document) and 1182(a)(6)(A)(i) (noncitizen present without admission or parole). ECF No. 14-2. The NTA reflects that an asylum officer determined Petitioner demonstrated a credible fear of persecution or torture. Id. at 1. Officials subsequently released Petitioner, ECF No. 14 at 1, ¶ 4, but the

record does not specify the manner of release.

On August 12, 2025, an immigration judge ("IJ") ordered Petitioner removed to Cuba *in absentia* after he failed to appear at his hearing. ECF No. 14-3. On or about June 14, 2026, immigration officials re-arrested Petitioner. ECF No. 14 at 8, ¶ 35. The record does not specify the basis for or manner of Petitioner's re-arrest. Petitioner has been detained and relocated to five different facilities since his re-detention. Id. at 2, ¶¶ 8-9. He is currently detained at the Central Valley Annex Immigration Detention Center within this judicial district. Id.

Petitioner, proceeding pro se, filed his § 2241 petition on September 4, 2026. In the form petition, Petitioner broadly challenged Respondent's alleged attempt to execute a third-country removal to Mexico. ECF No. 1. Due to the complexity of the legal issues involved, the undersigned granted Petitioner's unopposed motion to appoint counsel. ECF No. 9.

In the counseled first amended petition ("FAP"), Petitioner clarifies the immigration history laid out above and argues that he is entitled to relief pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001). ECF No. 14. Petitioner maintains that although his post-removal detention has not yet reached six months, he is entitled to release because his removal to Cuba is not reasonably foreseeable. Id. at 9-14. Petitioner adds that the government cannot indefinitely detain him "in order to effectively coerce him into consenting to go to Mexico." Id. at 14. Respondent opposes the petition on grounds that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or, in the alternative, post-removal detention under § 1231(a)(6). ECF No. 15 at 2. Respondent adds that the government is entitled to detain him beyond the 90-day removal period because he is unlikely to comply with the removal order. Id.

**II. Statutory Detention Authority**

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or

(3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)). "[Section] 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). ICE "may" only continue to detain the noncitizen after the 90-day removal period under certain circumstances, including when the noncitizen is removable on grounds of being convicted of certain criminal offenses. 8 U.S.C. § 1231(a)(6).

Petitioner's 90-day removal period began on August 12, 2025, when an IJ ordered him removed to Cuba *in absentia.* See Josue G.A. v. Warden of the Mesa Verde Det. Ctr., No. 1:26-CV-02419-TLN-SCR, 2026 WL 2070026, at *2 (E.D. Cal. July 17, 2026) ("For an order of removal issued *in absentia*, the removal period begins on the date the order is issued.") (citing 8 C.F.R. § 1241.1(e)). As the removal period has long since lapsed, § 1231(a)(6) has governed Petitioner's detention since his re-arrest in June 2026.

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

**III. Analysis**

The fact that Petitioner's post-removal detention has yet to reach six months does not foreclose a claim that his detention is unlawful under Zadvydas. "Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal." Clark v. Martinez, 543 U.S. 371, 384 (2005) (citing Zadvydas, 533 U.S. at 697-99); see also Uzzhina v. Chestnut, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, *3 n. 3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."); Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (explaining that "[a]t no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period"); Medina v. Noem, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what Zadvydas did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); Vijdani v. Mattos, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209, at *3-4 (D. Nev. Feb. 27, 2026) (collecting cases concluding the same).

Despite not yet reaching six months of post-removal order detention, Petitioner has overcome the presumption of reasonableness under Zadvydas. Respondent does not dispute Petitioner's assertion that Cuba has historically refused to accept deportees from the United States. ECF No. 14 at 11-12, ¶¶ 54. Numerous courts have recognized that Cuba does not generally issue travel documents allowing the United States to carry out removal orders to Cuba. See Barnada-Horta v. Raycraft, No. 1:26-CV-1023, 2026 WL 1265521, at *4 (W.D. Mich. May 8, 2026) ("Cuba is considered a recalcitrant country by DHS because Cuba is known to refuse or delay repatriation of their citizens."); Cabrera v. Senior Warden, No. C26-3073, 2026 WL 2249486, at *3 (C.D. Cal. Aug. 3, 2026) (discussing "Cuba's unwillingness to repatriate U.S. deportees" and collecting cases).

Petitioner also alleges that he has reason to believe that the DHS is attempting to remove him to Mexico, but that it has not formally provided him with a copy of a Notice of Third Country Removal to Mexico. ECF No. 14 at 8, ¶ 42. As Petitioner notes, Mexico will only accept third-country removal of Cubans if the detainee consents, id. at 12, ¶ 55, and he declares he has no intention of giving consent. Id. at 19, ¶ 85; see also Garcia v. Warden, Central Valley Annex, No. 1:26-cv-04659-DJC-JDP, 2026 WL 2254380, at *2 (E.D. Cal. Aug. 4, 2026) ("[D]istrict courts have repeatedly found that similarly situated petitioners – Cuban nationals whom the Government is attempting to remove to Mexico against their will – have met their initial [Zadvydas] burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen.") (collecting cases).

As Petitioner has met his burden of establishing a "good reason to believe" that there is no significant likelihood of his removal in the reasonably foreseeable future, the burden therefore shifts to Respondent to rebut Petitioner's showing. Zadvydas, 533 U.S. at 701. Respondent makes no attempt to rebut Petitioner's showing as to the likelihood of removal to Cuba. Instead, Respondent argues, without identifying any evidence of Petitioner's noncooperation with his removal order to Cuba, that "DHS may continue to detain the noncitizen who is unlikely to comply with the removal order." ECF No. 14 at 2 (citing § 1231(a)(6)).

Regarding DHS's alleged attempt to execute a third-country removal, Respondent did not submit a Notice of Removal to Mexico or otherwise acknowledge such efforts in its answer. To the extent Respondent is suggesting that a noncitizen's refusal to acquiesce to removal to a third country where an IJ has not ordered him removed constitutes a failure to cooperate with his removal such that his continued detention is permitted under § 1231(a)(1)(C), the undersigned rejects this claim. See Obando Vargas v. Blanche, et al., No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous[.]"); Suarez v. Chestnut, No. 1:26-cv-05147-EJD, 2026 WL 2547116, at *2 (E.D. Cal. Aug. 28, 2026) ("[Section 1231(a)(1)(C)] does not authorize the continued detention of an individual so that the

Government may obtain his consent to be removed to a third country he has not been afforded the opportunity to challenge."); Garcia, 2026 WL 2254380, at *3 ("To adopt the Government's position on the use of detention to strong-arm third-country removals would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations.").

Accordingly, because Petitioner has sufficiently established that his removal is not reasonably foreseeable and that his ongoing detention is therefore not reasonably necessary to secure his removal, the undersigned recommends that his petition be granted. See Zadvydas, 533 U.S. at 699–700.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED on Count One (Violation of Zadvydas).[1]

2. Respondent be ordered to immediately release Petitioner ADRIANA ANOCETO-GONZALEZ (A# 220-071-417) under conditions of supervision dictated by applicable statutes and regulations.

3. The Clerk of Court be directed to serve the Central Valley Annex Detention Facility with a copy of any final order granting release.

4. Respondent shall not re-detain Petitioner unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i) and any other applicable statutes and regulations.

5. Judgment be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties

---

[1] In the interests of judicial economy, Petitioner's other claim is not addressed herein.

have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 20, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE